IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) TRE WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-CV-159-JHP |
| | ) |
| (1) JAMES RASMUSSEN, SHERIFF OF OKFUSKEE COUNTY, in his official capacity, | ) ) ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant James Rasmussen's ("Defendant"), in his official capacity at Sheriff of Okfuskee County, Motion for Summary Judgment filed June 25, 2018 [Dkt. 28]. The Court, being fully advised in the premises, finds that Defendant's Motion should be, and is hereby, granted.

## I. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court held that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." The Court further held that "if the evidence is merely colorable, or not significantly probative, summary judgment may be granted." *Id.* In addition, the *Anderson* Court stated that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably

find for the plaintiff." *Id.* A movant's summary judgment burden may properly be met by reference to the lack of evidence in support of plaintiff's position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

Furthermore, as described by the court in *Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526 (10th Cir. 1994), "Even though all doubts must be resolved in (the nonmovant's) favor, allegations alone will not defeat summary judgment." *Cone* at 530 (citing *Celotex*, 477 U.S. at 324). *See also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *Roemer v. Pub. Serv. Co. of Colo.*, 911 F. Supp. 464, 469 (D. Colo. 1996). Moreover, "(i)n response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## II. UNDISPUTED FACTS

Reviewing the evidentiary material submitted by the parties, the Court finds that there are no material disputes as to the following facts:

On September 25, 2015, Tre Wright ("Plaintiff"), who was incarcerated in the Okfuskee County Jail ("the jail"), became involved in a physical altercation with his cell mate, and hit him in the mouth. (Dkt. 28-1, 12:24-13:20). When Plaintiff hit him, the cell mate's tooth cut Plaintiff's index finger. (Dkt. 28-1, 13:19-23). Plaintiff reported the cut to a jailer, who gave him a bandage to cover the wound. (Dkt. 28-1, 14:17-9, 15:15-17). Believing that his right hand or finger was broken from the fight, Plaintiff filled out a Sick Call Request form the day of the fight asking to the see the jail nurse. (Dkt. 28-1, 15:15-25; Dkt. 28-5). The sick call request completed on September 25 did not mention the cut on Plaintiff's finger. (Dkt. 28-1, 16:17-22; Dkt. 28-5). During the following two days, Plaintiff continued to receive bandages from jail staff, but did not fill out any sick call request forms on September 26 or September 27 about the cut, or any

other medical complaint. (Dkt. 28-1, 16:25-17:14, 38:19-24). Plaintiff did fill out two sick call request forms on September 28, 2015. (Dkt. 28-1, 17:19-18:4, 18:11-21; Dkt. 28-6; Dkt. 28-7). On one of those forms he sought medical care for the cut on his finger for the first time. (Dkt. 28-1, 18:11-21; Dkt. 28-7).

The same day Plaintiff submitted the sick call request form regarding the cut on his finger, he was seen by a nurse employed by Turn Key Health. (Dkt. 28-1, 43:15-18; Dkt. 28-8; Dkt. 28-9). She cleaned and dressed the wound, gave Plaintiff an ice pack and ibuprofen, and called the doctor for further instructions. (Dkt. 28-1, 43:15-18; Dkt. 28-8; Dkt. 28-9). Plaintiff was then taken to the Creek Nation Hospital Emergency Room the following day, September 29. (Dkt. 28-1, 19:6-15, 41:3-22; Dkt. 28-10). Hospital physicians x-rayed his hand and determined it was not broken, but that the cut on his finger was infected. Plaintiff was prescribed antibiotics and ibuprofen for the infection, and discharged from the hospital back to the jail with instructions to return for a check-up the following day. (Dkt. 28-10). He was then taken back to the Creek Nation hospital on September 30 and immediately transported to Oklahoma State University Medical Center in Tulsa, where he was treated by specialists. (Dkt. 28-1, 22:24-23:7, 23:6-20; Dkt. 28-12). The infection in Plaintiff's hand worsened over the next several weeks, and eventually, a portion of his right index finger was amputated. (Dkt. 28-1, 23:15-25:14).

During the time Plaintiff was incarcerated at the jail, the jail contracted with healthcare provider Turn Key Health Clinics to provide healthcare and medical services to inmates. (Dkt. 28-13; Dkt. 28-14). The jail had a policy in place to provide inmates with both emergency and non-emergency medical care, comparable to that which is received by citizens in the surrounding community. (Dkt. 28-13; Dkt. 28-15). Jail policy further stated that an inmate's request for medical services will be denied. (Dkt. 28-15). The medical policy required inmates to fill out sick call request forms for non-emergency care, and required that medication be given to inmates

3

per physician's orders. (Dkt. 28-13; Dkt. 28-15). The policy also specifically addressed treating cuts. (Dkt. 28-15). Additionally, it was Defendant's policy to rely on and defer to the decisions of medical providers regarding the treatment inmates receives. (Dkt. 28-13).

### III. ANALYSIS

#### A. No Underlying Violation to Support Plaintiff's 42 U.S.C. § 1983 Claim

Plaintiff asserts a claim against Defendant under 42 U.S.C. § 1983. Specifically, Plaintiff alleges that his rights under the Eighth Amendment were violated by healthcare being denied or delayed while he was incarcerated in the Okfuskee County Jail.

Section 1983 creates no substantive civil rights, but rather only provides a procedural mechanism for enforcing rights established elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Gallegos v. City and County of Denver*, 984 F. 2d 358, 362 (10th Cir. 1993). *See also Miller v. Hawver*, 474 F. Supp. 441, 442 n.1 (D. Colo. 1979) (§ 1983 is not a general or common law tort claims statute). To sustain a § 1983 claim, Plaintiff must present "specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F. 2d 358, 363 (2nd Cir. 1987).

First and foremost, Plaintiff must show an underlying violation of his constitutional rights by some employee of Defendant before municipal liability can be imposed against him in his official capacity as Sheriff of Okfuskee County. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993), the Tenth Circuit Court of Appeals held that "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." (Citations omitted.) This is so

"regardless of whether the municipality's policies might have 'authorized' such harm." *Id*. (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)); s*ee also Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006) (a plaintiff suing a county under section 1983 for the actions of one of its officers must demonstrate that a municipal employee committed a constitutional violation); *Livsey v. Salt Lake County*, 275 F.3d 952, 958 (10th Cir. 2001) (defendants' actions did not violate constitutional rights and could not have caused the county to be held liable based on their actions). Here, Plaintiff failed to demonstrate any underlying violation of his constitutional rights.

Plaintiff alleges that Defendant or his employees were deliberately indifferent to his medical needs during his incarceration at the jail, particularly with regard to the cut on his index finger. The U.S. Supreme Court held in *Estellev. Gamble*, 429 U.S. 97 (1976), that deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment, and that such a constitutional violation is actionable under § 1983. *Estelle* at 104. That ruling thereby established the "deliberate indifference" test against which all § 1983 inmate denial and delay of medical care claims are judged. *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994). A plaintiff must satisfy both the objective and subjective elements of the deliberate indifference test to demonstrate that his constitutional rights regarding medical care were violated. *Mata v. Saiz*, 427 F.3d 745, 752-753 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834-37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Because Defendant acknowledged the amputation of Plaintiff's finger was sufficiently serious, Plaintiff satisfied the objective portion of the test and only needed to prove the subjective element.

Plaintiff, however, did not prove the subjective element. To do so, he must show Defendant or his employees acted with a "sufficiently culpable state of mind," so egregious it amounts to "deliberate indifference" to a substantial risk of serious harm. *Farmer* at 834. Mere

negligence, even gross negligence, is insufficient to meet this standard. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495 (10th Cir. 1990) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 and n.7 (1989). Plaintiff was required to demonstrate that Defendant's employees disregarded a known or obvious risk that Plaintiff's finger was so infected that the infection could result in amputation, or that jail employees were aware that Plaintiff was at substantial risk of serious harm and did not act to mitigate that risk. *See Barrie, supra,* at 869. *See also Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). Plaintiff has failed to meet this exceptionally high standard, and has not shown that jail employees disregarded obvious consequences of their as it relates to providing medical care to Plaintiff. *Brown, supra,* at 520 U.S. 410.

Prior to Plaintiff's September 28 request for medical services, there is no evidence that any jail employee was subjectively aware that Plaintiff's finger was experiencing a serious infection or that Plaintiff was possibly at risk for amputation. During the September 25, 2015 altercation, Plaintiff hit his cell mate in the mouth, which resulted in Plaintiff receiving a cut on his index finger from his cell mate's tooth. (Dkt. 28-1, 12:24-13:23). When Plaintiff advised a jailer he received a cut, he was provided a bandage. (Dkt. 28-1, 14:17-9, 15:15-17). While Plaintiff filled out a sick call request the same day as the altercation, the sick call request only mentioned the potentially broken finger or hand, and did not mention a laceration. (Dkt. 28-1, 15:15-25, 16:17-22; Dkt. 28-5). Plaintiff's testimony reveals he did not request medical or attention for the cut that day because he was not concerned about it at the time, and did not believe he needed a medical professional to treat the cut. (Dkt. 28-1, 16:17-22, 48:10-49:1). He further testified that had he not been in jail at the time, he would not have sought treatment from a medical provider for that cut. (Dkt. 28-1, 37:25-38:5).

Per jail policy regarding non-emergency medical care, inmates are required to fill out a sick call request form. (Dkt. 28-13; Dkt. 28-15). Plaintiff did not fill out any sick call request

forms on September 26 or September 27. (Dkt. 28-1, 16:25-17:14). Jailers continued to provide him with bandages for his finger during this time when he asked for one. (Dkt. 28-1, 38:19-24). On September 28, 2015 Plaintiff filled out two sick call request forms, one of which stated for the first time that he believed his finger may be infected. (Dkt. 28-1, 17:19-18:21; Dkt. 28-6; Dkt. 28-7). He was examined by a Turn Key Nurse the very same day he filled out the sick call request form for the infection. (Dkt. 28-1, 43:15-18; Dkt. 28-8; Dkt. 28-9). The Turn Key nurse cleaned and dressed the wound, applied an ice pack, administered ibuprofen, and called the doctor for further orders. (Dkt. 28-1, 43:15-18; Dkt. 28-8; Dkt. 28-9). The following day, September 29, Plaintiff was taken to the Emergency Room at Creek Nation Hospital for further treatment and evaluation of his finger. (Dkt. 28-1, 19:6-15, 41:3-22; Dkt. 28-10).

At the hospital, Plaintiff was examined by a physician, and received an x-ray of his right hand, which showed his hand was neither broken nor fractured. (Dkt. 28-1, 16:23-24, 19:16-18; Dkt. 28-10). His cut was examined, and Plaintiff was prescribed antibiotics and ibuprofen, and was told to elevate his hand at all times. (Dkt. 28-10). He was then discharged back to the jail. (Dkt. 28-1, 21:13-24; Dkt. 28-11). Although Plaintiff testified the Emergency Room physician wanted to admit him to the hospital that day, his medical records demonstrate otherwise. The medical notes from the physician do not state that he wanted to admit Plaintiff to the hospital, or that Plaintiff was discharged back to the jail against medical advice. (Dkt. 28-1, 20:10-21:1; 28-10). The treatment plan states only that Plaintiff was to elevate his hand and return to the hospital for a follow-up in twenty-four hours, and there is no testimony or other evidence from the treating physician that he desired Plaintiff be admitted at that point. (Dkt. 28-10). Per physician's orders, Plaintiff was taken back to the emergency room the following day, September 30. (Dkt. 28-1, 22:24-23:7; Dkt. 28-12). He was then immediately transferred to OSUMC by the jail for more specialized care. (Dkt. 28-1, 23:6-20). After two surgeries to

7

remove the infection, Plaintiff's finger was amputated. (Dkt. 28-1, 23:6-20).

Plaintiff has not produced any evidence that jail employees were aware Plaintiff's finger was at risk for substantial harm OR that they disregarded that risk. It is not enough to establish that a government officer should have known of the risk of harm; actual knowledge of that risk is required. *Barney v. Pusipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). Plaintiff must demonstrate that jail staff were both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and they "must also draw that inference." *Farmer, supra,* at 839-840. Here, Plaintiff has not pointed to any evidence that jail staff were aware of facts from which they could draw the inference that he was at risk of substantial harm, actually drew the inference, and did nothing to mitigate his risk. Plaintiff himself testified that when he first requested medical care for his hand on September 25, he did not think the cut was anything to be concerned about, and did not mention it on his sick call request form. (Dkt. 28-1, 16:17-22, 48:10-49:1; Dkt. 28-5). In fact, he believed the bandage the jailers gave him was appropriate medical treatment at that time and that he did not need treatment by an individual with medical training. (Dkt. 28-1, 48:10-49:1). Jailers continued to provide him with bandages over the weekend, during which time Plaintiff did not submit any additional sick call request forms. (Dkt. 28-1, 16:25-17:14, 38:19-24). Once Plaintiff *did* fill out a sick call request form on September 28 regarding the cut and a potential infection, he was seen and treated by a Turn Key nurse the very same day. (Dkt. 28-1, 18:11-21, 43:15-18; Dkt. 28-7; Dkt. 28-8; Dkt. 28-9). He was then taken to the emergency room on September 29, and again on September 30. (Dkt. 28-1, 19:6-15, 22:24-23:7, 41:3-22; Dkt. 28-10; Dkt. 28-12). There is no question that Plaintiff received prompt medical care as soon as he requested it. There was no deliberate indifference to his medical needs, and Defendant is not liable for an Eighth Amendment violation for denial of medical care.

Plaintiff also failed to establish that a delay in medical care by the jail constituted

8

deliberate indifference to his medical needs in violation of the Eighth Amendment. While it is true that jail officials may be liable for deliberate indifference when they "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment," *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) ((citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)), a "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Id.* at 1210 (citing *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). But again, Plaintiff must demonstrate that jail staff was aware of a risk of serious harm and delayed medical care in spite of that risk, and that did not occur here.

There is no evidence that medical care for the infection was delayed in this case. Plaintiff reported on the September 28 Sick Call Request form that he had an infection, and was seen by the nurse that very day. (Dkt. 28-1, 18:11-21, 43:15-18; Dkt. 28-7, Dkt. 28-8; Dkt. 28-9). He had not filled out any Sick Call Requests the two days prior, and his September 25 Sick Call Request did not mention the cut because he was not worried about it at that time. (Dkt. 28-1, 16:17-17:14; Dkt. 28-5). Additionally, though Plaintiff alleges that medical delayed when he was taken back to the jail on September 29 instead of being admitted to the hospital, Plaintiff's medical records do not indicate that the suggest treatment for his finger on September 29 included hospital admission, or that Defendant refused to permit him to be admitted. (Dkt. 28-1, 20:10-21:1; Dkt. 28-10). To the contrary, Plaintiff's September 29 records indicate that Plaintiff was to receive antibiotics and ibuprofen, elevate his hand, and return in 24 hours. (Dkt. 28-10). Plaintiff was then returned to the Emergency Room per physician's orders the following day. (Dkt. 28-1, 22:24-23:7; Dkt. 28-12). When a visit to a specialist and further treatment was advised on that second visit, he was taken to OSUMC that very same day, where he was treated by the specialist. (Dkt. 28-1, 23:6-20).

Finally, Plaintiff has alleged that the medical treatment he received was not appropriate. (See Complaint ¶ 17). This allegation does not adequately support Plaintiff's contention that his constitutional rights were violated. It is the policy of the jail to provide inmates access to medical care. (Dkt. 28-13; Dkt. 28-15). The jail accomplished this during Plaintiff's incarceration by contracting with Turn Key Health Clinics to provide medical services to Okfuskee County Jail inmates. (Dkt. 28-13; Dkt. 28-14). It is also the policy and practice of the Defendant to rely on Turn Key medical staff to make the decisions regarding inmate medical care. (Dkt. 28-13). Such reliance on the opinions of medical professionals was reasonable and appropriate. Jail officials may rely on a medical professional's judgment regarding inmate medical care unless it would be obvious to a layperson that the medical professional was providing inadequate or inappropriate treatment. *Johnson v. Doughty*, 433 F.3d 1001, 1010-1011 (7th Cir. 2006). *See also Spruill v. Gillis*, 372 F.3d 218, 235 (3rd Cir. 2004). Although Plaintiff apparently alleges that he should have been taken to the hospital sooner and the treatment he received at the jail was inadequate, he *did* receive treatment from a Turn Key nurse on September 28. (Dkt. 28-1, 43:15-18; Dkt. 28-8; Dkt. 28-9). A "mere difference of opinion between medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

Plaintiff has not demonstrated that an underlying violation of his constitutional rights occurred. Defendant is therefore entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim.

### B. No Municipal Liability Under 42 U.S.C. § 1983

Regardless, even if Plaintiff had established that a violation of his constitutional rights occurred, Defendant would still nevertheless be entitled to summary judgment with regard to

Plaintiff's § 1983 claim. Municipal liability under § 1983 cannot be based upon the doctrine of *respondeat superior* or vicarious liability. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In *Monell*, the Supreme Court held that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that entity's own policies and customs. *Monell*, 436 U.S. at 694. The actions of the governmental entity must be the moving force behind the constitutional violation. *Id*. The Supreme Court has held that governmental liability for a constitutional violation "attaches where - and only where - the entity makes a deliberate choice to follow a course of action from among various alternatives." *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1291, 89 L. Ed. 2d 425 (1986). The municipal defendant may not be held liable in his official capacity simply because it "employs a tortfeasor." *Board of County Commissioners of Bryant County, Oklahoma v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). Additionally, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Id.* at 406-07. Rather, *Monell* requires a plaintiff to establish that a policy or custom of the municipality exists and that it caused the alleged constitutional violations. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985); *see also Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (plaintiff must show that there is a direct causal link between the policy or custom and the injury alleged). Additionally, proof of a single isolated incident of an alleged constitutional violation is not sufficient to establish that an unconstitutional policy or custom existed in an agency. *Tuttle*, 471 U.S. at 821.

Accordingly, in order establish municipal liability against Defendant in his official capacity, Plaintiff must show that a custom or policy of Defendant caused the alleged constitutional violation(s), or that an official with final policy-making authority for the

municipal defendant personally participated in the alleged constitutional violation(s). *See Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (municipality cannot be held liable under § 1983 unless the act complained of is that of a final policymaker or a custom or usage is shown). Furthermore, it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. *Board of County Commissioners v. Brown*, 520 U.S. 397, 409 (1997). The plaintiff must also demonstrate that, through its *deliberate conduct*, the municipality was the "*moving force*" behind the injury alleged. *Id.* (emphasis added).

Here, there is no evidence that a policy or procedure of Defendant resulted in the alleged constitutional violation. Defendant had a policy in place to provide medical care to inmates. (Dkt. 28-13; Dkt. 28-15). Per jail policy, inmates are to receive medical care for both emergency and non-emergency medical conditions. (Dkt. 28-15). Jail policy further states that medication is to be distributed per doctor's orders, and that for minor cuts, jail staff will clean the wound and apply a bandage for twenty-four hours, not to exceed a twenty-four hour period. (Dkt. 28-15). Jail staff contracted with Turn Key Health Clinics to provide this care to inmates. (Dkt. 28-13; Dkt. 28-14). It is also jail policy to defer to the judgment of medical professionals for the treatment inmates receive. (Dkt. 28-13). Plaintiff therefore has not demonstrated that any constitutional violation was the result of Defendant's policies.

In fact, Plaintiff admitted in his response to Defendant's Motion for Summary Judgment that the jail's policy is to provide healthcare to inmates. (Dkt. 29). Although he alleges that Defendant had inadequate or non-existent policies regarding infections or human bite wounds, Plaintiff did not point to any evidence that the need for such a specific policy was so obvious that not having one amounted to deliberate indifference. He did not produce any evidence demonstrating that Defendant had a practice or custom of not providing medical treatment for

infections. *See Lankford v. City of Hobart*, 73 F.3d 282, 286 (10th Cir. 1996) (holding that actions must be persistent and widespread to establish a custom or practice.). Isolated incidences are not sufficient to establish municipal liability. *See Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) and *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999). The lack of persistent inattention to infections in this case is highlighted by the fact that Plaintiff admitted that he previously received medical care at the jail for an infection. (Dkt. 29, Admitted Fact #2).

Furthermore, Plaintiff has not pointed to any evidence that any official with final policy-making authority for the jail personally participated in the alleged constitutional violation. *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). While Plaintiff alleged in his Response to Defendant's Motion for Summary Judgment that the acting Sheriff refused to allow him to be admitted, the record contains no evidentiary support for this claim. Plaintiff's medical records do not indicate that hospital admission was recommended on September 29. (Dkt. 28-1; 20:10-21:1; Dkt. 28-10). And Plaintiff testified that he did not know who at the jail allegedly denied permission to admit him to the hospital at that time. (Dkt. 28-1, 19:24-20:7). This Court cannot assume that it was the acting Sheriff who allegedly refused to admit Plaintiff, absent any evidence. The unsubstantiated allegations by Plaintiff regarding personal participation of the Sheriff at the time are insufficient to create a genuine issue of fact. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Intern., Inc.*, 386 F.3d 869, 875 (10th Cir. 2004).

Plaintiff has failed to establish municipal liability on the part of Defendant, and Defendant is therefore granted summary judgment on Plaintiff's municipal liability claim.

### C. Failure to Train Claim

Defendant also seeks summary judgment on Plaintiff's claim regarding failure to train. There are limited circumstances where inadequacy in training can be a basis for § 1983 liability.

*City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (citation omitted). Inadequacy in training may serve as the basis for municipal liability under § 1983 "only where the failure to train amounts to deliberate indifference..." to inmate rights. *City of Canton*, 489 U.S. at 388. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality...can a city be liable for such a failure under § 1983." *Id*. at 389. To establish deliberate indifference to a need for training, Plaintiffs must show that the municipal defendant knew of and disregarded the substantial risk of inadequate training of his employees. *Canton*, 489 U.S. at 388. It isn't enough to "show that there were general deficiencies in the county's training program for jailers." *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999). Rather, a plaintiff must "identify a specific deficiency" that was obvious and "closely related" to his injury. *Id*.

Defendant argues that Plaintiff cannot prove this claim. In his Response brief, Plaintiff does not dispute Defendant's statement in this regard, and does not respond to Defendant's argument or otherwise address this portion of his claim. (Dkt. 29). Accordingly, Defendant is granted summary judgment on Plaintiff's failure to train claim.

### D. Failure to Supervise Claim

Defendant additionally seeks summary judgment on Plaintiff's claim premised upon supervisory liability. Supervisory "status by itself is insufficient to support liability." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (citing *Rizzo v. Goode*, 423 U.S. 362, 376, 96 S. Ct. 598, 606-07, 46 L. Ed. 2d 561 (1976)). In order to prevail on such a claim, Plaintiff must present evidence of an affirmative link between the alleged constitutional violations and the Defendant's failure to supervise. *Meade v. Grubbs*, 841 F.2d 1512, 1527-28 (10th Cir. 1988).

*See also Ruegsegger v. Jefferson County Bd. of County Com'rs*, 197 F. Supp. 2d 1247 (D. Colo. 2001). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the supervisor had done more than he or she did." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3rd Cir. 1989). Rather, Plaintiff must show that Defendant or his employees were deliberately indifferent to the deprivation of Plaintiff's rights. *See City of Canton v. Harris*, 489 U.S. 378, 397, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). In other words, Plaintiff must show that Defendant knew of and disregarded a substantial risk to Plaintiff's well-being. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). He must also show that Defendant was "adequately put on notice of prior misbehavior." *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979).

Defendant argues that Plaintiff cannot prove this claim. In his Response brief, Plaintiff does not dispute Defendant's statement in this regard, and does not respond to Defendant's argument or otherwise address this portion of his claim. (Dkt. 29). Accordingly, Defendant is granted summary judgment on Plaintiff's failure to supervise claim.

## IV. CONCLUSION

Accordingly, the Court grants Defendant James Rasmussen's Motion for Summary Judgment.

**IT IS SO ORDERED this 4th day of October, 2018.**

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma